UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ROBERT KEITH JENKINS,              )
                                   )
            Plaintiff,             )
                                   )
v.                                 )      No. 3:16-cv-699-HBG
                                   )
NANCY A. BERRYHILL,                )
Acting Commissioner of Social Security,  )
                                   )
            Defendant.             )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 26]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 33 & 33–1] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 34 & 35]. Robert Keith Jenkins ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On May 30, 2013, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, claiming a period of disability that began on November 11, 2011. [Tr. 14, 140–41]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 94–95]. A hearing was held on June 11, 2015. [Tr. 30–56]. On September 4, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 14–23]. The Appeals Council denied Plaintiff's request for review on October 21,

2016 [Tr. 3–8], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on December 20, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2.  The claimant has not engaged in substantial gainful activity since November 11, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, neck disorder status post injury and fusion with associated upper extremity limitations, and diabetes mellitus (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light (to medium) work as defined in 20 CFR 404.1567(b). The claimant is unable to perform frequent pushing and pulling movements with arm or leg controls. The claimant is unable to climb and crawl. The claimant is limited to occasional overhead reaching.
>
> 6.  The claimant is capable of performing past relevant work as a training development specialist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 11, 2011, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 16–22].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.   DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.

> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and

4

vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff presents several challenges to the ALJ's finding that he was not disabled. First, Plaintiff asserts that the ALJ failed to properly analyze whether he met several Listings, including Listings 1.02, 1.03, 1.04, 11.08, 11.17, and 11.19. [Doc. 33-1 at 10–16]. Next, Plaintiff alleges that the ALJ failed to assign significant weight to his treating sources' opinions and to his testimony regarding his level of pain. [*Id.* at 1, 10, 16–18]. Lastly, Plaintiff claims that the ALJ failed to consider the limiting effects of several of his medical conditions as severe impairments. [*Id.* at 10]. The Court will address Plaintiff's specific allegations of error in turn.

### A.     Step Three Determination

Plaintiff argues that the ALJ erred in finding that he did not meet or equal several Listings, which would have entitled him to a presumptive finding of disability. Specifically, Plaintiff claims that the ALJ improperly found that he did not meet Listings 1.02, 1.03, 1.04, 11.08, 11.17, and

11.19. [*Id.* at 10–16].

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529. Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity. 20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability").

As an initial matter, other than citing to the requirements of the Listing, Plaintiff fails to allege that his severe impairments met or equaled Listings 11.17 and 11.19. The Court is not required to review the parties' filings in order to develop their argument, as "[i]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014). Accordingly, the Court finds that Plaintiff has waived any argument that the ALJ improperly found that he did not meet Listings 11.17 or 11.19. *See, e.g.*, *Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014) ("Plaintiff bears the burden of establishing that he meets a particular listing and plaintiff's argument in this regard is not sufficiently developed such that the undersigned can make such a determination. Plaintiff cannot simply make the bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim.").

Next, Plaintiff claims that the ALJ erred in finding that his impairments did not meet Listing 11.08. Plaintiff claims that he "suffers from a syrinx and syringomyelia," which meet or are the equivalent of Listing 11.08, and are supported by records of Dr. McCroskey, Dr. Butler, and Dr. Sanders. [Doc. 31-1 at 14–15]. Listing 11.08 relates to spinal cord or nerve root lesions due to any cause with disorganization of motor function as described in Listing 11.04B, which describes a central nervous system vascular accident, with significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (under Listing 11.0C) for more than 3 months post-vascular accident. 20 C.F.R. pt. 404, Subpt. P, App. 1, Listings 11.08 and 11.04B. However, Plaintiff again fails to discuss the specific requirements of Listing 11.08, other than claiming that he suffers from a syrinx and syringomelia and citing to medical records. Solely citing to treatment notes in the medical record, without alleging how he satisfied the Listing, constitutes a perfunctory

analysis. *See Drake v. Comm'r of Soc. Sec.*, No. 1:13-CV-230, 2014 WL 4983839, at *8 (W.D. Mich. Sept. 24, 2014) ("Plaintiff has failed to meet her burden demonstrating that her condition met or equaled a listed impairment. While plaintiff's brief included a summary of her medical record, she did not address the requirements of . . . Listing 11.08 (spinal cord and nerve root lesions due to any cause) . . . nor did she demonstrate which specific medical findings satisfied any particular listing."). Therefore, the Court also finds that Plaintiff has waived any argument with respect to Listing 11.08.

In the disability decision, the ALJ only stated at Step Three that "[t]he medical evidence of record does not support a finding that a physical impairment or a combination of physical impairments rise to the level of severity required to meet or medically equal any listed impairment." [Tr. 16]. However, the ALJ failed to address any specific Listings, or detail why he did not find Plaintiff's impairments met or equaled any Listing. "It will not be sufficient, however, for the ALJ merely to state in a conclusory fashion that the proof offered by the claimant does not meet or medically equal the criteria of a listed impairment without analysis or any citation or discussion of the evidence and conflicts in the evidence that relate to the listed impairment at issue." *Crayton v. Comm'r of Soc. Sec.*, No. 3:17-CV-675-DW, 2018 WL 3370565, at *7 (W.D. Ky. July 10, 2018) (citing *Evans ex rel. DCB v. Comm'r of Soc. Sec.*, No. 11-CV-11862, 2012 WL 3112415, at *8–11 (E.D. Mich. Mar. 21, 2012), *report and recommendation adopted by*, 2012 WL 3112316 (E.D. Mich. July 31, 2012)). Therefore, in his Step Three analysis, the ALJ did not provide adequate reasoning to facilitate meaningful review by the Court. *See Reynolds v. Comm'r Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("In short, the ALJ needed to actually evaluate the evidence, compare it to [ ] the Listing, and give an explained conclusion, in order to facilitate meaningful review.").

However, "[t]he Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (per curiam) (rejecting argument that ALJ erred by not making specific findings at step three because the ALJ's conclusion was supported by substantial evidence in the record). In *Forrest*, the Sixth Circuit upheld the ALJ's conclusory finding at step three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three; and (2) even if the ALJ's factual findings failed to support his step three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. 591 F. App'x at 366. The Court will address Plaintiff's arguments with respect to the remaining Listings.

### 1. Listing 1.02 and Listing 1.03

First, Plaintiff claims that "[t]he records of Dr. Marye McCroskey support that [he] would meet the conditions for 1.02 major dysfunction of the joints due to any case terms of difficulty in ambulating." [Doc. 33-1 at 12]. Under Listing 1.02, a claimant must show, in relevant part:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) . . . [w]ith:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in

1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Under Listing 1.03, a claimant will be found to be disabled if, following the reconstructive surgery of a major weight-bearing joint, he or she is unable to ambulate effectively and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset. 20 CFR Pt. 404, Subpt. P, App. 1, Listing § 1.03.

Here, Plaintiff asserts that the records of Marye McCroskey, M.D., support a finding that he would meet the requirements for Listings 1.02 and 1.03 due to difficulty in ambulating effectively, as the record demonstrates evidence of "severe nerve root compression characterized by neuro anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weaknesses) accompanied by sensory or reflex loss." [Doc. 33-1 at 12–13]. Plaintiff claims that he is unable to ambulate effectively because of his "inability to walk a significant distance without causing himself severe pain." [*Id.* at 14]. Moreover, Plaintiff contends that his surgery on both knees, including a reconstructive surgery on his left knee and a scope procedure on his right knee, resulted in him being unable to ambulate effectively, and he was subsequently instructed by Dr. McCloskey that the only form of walking exercise he should do is walk in a pool. [*Id.*].

However, the Commissioner maintains that Plaintiff has not demonstrated the "extreme" limitation of an inability to ambulate effectively. [Doc. 35 at 10]. First, the Commissioner notes that Plaintiff underwent a Functional Capacity Evaluation ("FCE") with Calvert Marasigan, a licensed physical therapist, which indicated that Plaintiff was capable of performing work involving frequent walking. [*Id.*]; *see* [Tr. 19, 254]. Additionally, the Commissioner asserts that Plaintiff's treatment notes indicate a normal gait and no use of an assistive device. [Doc. 35 at 10]. Further, with respect to Listing 1.03, the Commissioner alleges that Plaintiff has failed to

demonstrate an extreme gait limitation.  [*Id.* at 11].

Plaintiff was seen by Dr. McCroskey on February 3, 2012 "after a several year hiatus" for evaluation of a neck injury.  [Tr. 439].  The ALJ reviewed Dr. McCroskey's treatment records and progress notes from July 23, 2012, March 3, 2014, July 11, 2014, and July 23, 2014 [Tr. 17–18], as well as Dr. McCroskey's opinion on May 20, 2013 following a review of the FCE performed by Mr. Marasigan [Tr. 21].

On July 11, 2014, Dr. McCroskey noted that Plaintiff reported a history of back and neck pain, as well as that Plaintiff reported that he suffers "shooting pains" in both of his legs 25–30% of the time.  [Tr. 387].  However, Dr. McCroskey also found that Plaintiff has full range of motion of the hips, but marked pain when forward flexing and extending, as well as positive straight-leg test bilaterally and cross-positive straight-leg test being the most prominent on the left.  [Tr. 389]. Dr. McCroskey stated that due to Plaintiff's degenerative disc disease, low back pain, and rotator cuff tear, "he is barely holding his own at this point."  [*Id.*].  Lastly, Dr. McCroskey reviewed the results of an MRI and reported on July 23, 2014, that Plaintiff had bilateral C6-7 foraminal stenosis from degenerative joint disease, and that an MRI of Plaintiff's lumbar spine revealed central disk protrusion at L1-2, L2-3, and L3-4, as well as moderate bilateral foraminal stenosis at L3-4, L5-S1 due to degenerative changes and moderate to severe bilateral L4-5 foraminal stenosis due to degenerative changes.  [Tr. 384].

When reviewing the opinion, the ALJ stated that "Dr. McCroskey noted that the evaluator indicated that the claimant was able to stand and walk, but indicated that her concern was with activities where the claimant needed his arms to balance on a ladder or to crawl where he would have to hold up his own body weight."  [Tr. 21].

Mr. Marasigan examined Plaintiff's functional capacity on April 9, 2013.  [Tr. 253].  In his

synopsis of the findings of the FCE, Mr. Marasigan noted that the results of a fitness test indicated that Plaintiff was capable of performing work involving frequent walking, including going up and down steps and a ladder. [Tr. 254]. The ALJ noted this finding, as well as that "[t]he observation of mobility tests suggested that [Plaintiff] would be able to perform job tasks involving frequent low-level work, bending and stooping, twisting and spinal rotation, dynamic standing, kneeling, sitting and squatting." [Tr. 19]. Further, when reviewing the FCE, the ALJ summarized that Plaintiff "was reported to be able to stand on both feet evenly for a long period of time, and no limitation with walking was noted." [*Id.*].

The Commissioner asserts that Dr. McCroskey's treatment notes do not support Plaintiff's alleged inability to ambulate or an extreme gait limitation, as the treatment records do "not document that Plaintiff had any serious manipulative or gait defects of the type contemplated by the listings Plaintiff cites." [Doc. 35 at 12]. Additionally, the Commissioner maintains that Plaintiff's testimony at the hearing that his doctor had told him that the only form of exercise he should do is walk in the pool cannot demonstrate that Plaintiff meets the listing requirements. [*Id.*]. Therefore, the Commissioner claims that Plaintiff has not met his burden of establishing that he meets the requirements of Listings 1.02 or 1.03.

The Commissioner points to evidence that she claims supports a finding that Plaintiff is able to ambulate effectively, including treatment notes showing a normal gait, thus establishing that Plaintiff could not meet the requirements of either Listing. However, the Commissioner fails to cite to findings of the ALJ regarding the medical record or whether Plaintiff met the requirements of Listing 1.02. *See Russell v. Comm'r of Soc. Sec.*, No. 2:15-cv-407, 2016 WL 1103897, at *6 (S.D. Ohio Mar. 22, 2016) ("Although the Commissioner argues that the ALJ's determination should be upheld because the record evidence elsewhere does not establish that

Russell's impairment[s] satisfied the criteria for Listing 12.05C, 'the ALJ included no such analysis in the decision," and this Court "cannot engage in post hoc rationalizations.'") (internal citations omitted); *Bluer v. Comm'r of Soc. Sec.*, No. 1:13-cv-22, 2014 WL 700424, at *6 (W.D. Mich. Feb. 24, 2014) ("Defendant's brief contains the type of evaluation [including addressing the ability to ambulate effectively] which the ALJ should have provided in his decision and seeks to have this Court affirm the ALJ's decision based upon an analysis which the ALJ did not perform. In short, defendant seeks to have this court perform a *de novo* review of the administrative record to determine whether plaintiff meets the requirements of Listing 1.02."). "Without the ALJ actually evaluating the evidence, comparing it to the criteria of the affected listing and providing an explained conclusion, meaningful judicial review cannot occur and it becomes 'impossible to say that the ALJ's decisions at Step Three was supported by substantial evidence.'" *See Crayton v. Comm'r of Soc. Sec.*, No. 3:17-CV-675-DW, 2018 WL 3370565, at *8 (W.D. Ky. July 10, 2018) (citing *Miaun v. Colvin*, No. 3:14-CV-222-TAV-HBG, 2015 WL 2248750, at *11 (E.D. Tenn. May 12, 2015)).

In the disability decision, the ALJ found the opinion Carolyn Parish, M.D., the nonexamining state agency physician, to be a "reasonable estimation of [Plaintiff's] ability to perform work-related activities." [Tr. 20]. The ALJ noted that Dr. Parish reported that Plaintiff was unlimited in his ability to climb ramps and stairs, but was limited to the occasional climbing of ladders, ropes, and scaffolds. [*Id.*]. The ALJ also noted that Mr. Marasigan stated that Plaintiff was capable of work involving standing and walking. [Tr. 21]. However, the Commissioner does not cite to specific findings made by the ALJ to support the assertion that Plaintiff is unable to ambulate effectively. Moreover, the ALJ did not state the weight assigned to any opinion of Dr. McCroskey, and found that Mr. Marasigan's opinion was given "some but not persuasive

consideration," as he was not an acceptable medical source. [*Id.*]. Lastly, the ALJ did not analyze the effects of Plaintiff's severe impairments on the ability to ambulate effectively under Listings 1.02 or 1.03. *Cf. Ashe v. Berryhill*, No. 1:16-cv-399, 2018 WL 1586098, at *8 (E.D. Tenn. Mar. 31, 2018) ("Because the ALJ found that Plaintiff did not show ineffective ambulation as defined by 1.00B2b, Plaintiff cannot meet all the criteria for listing 1.02, and remand is unnecessary.").

Further, the ALJ failed to analyze the medical evidence pursuant to the criteria of Listings 1.02 or 1.03, and the Court finds that Plaintiff cites to evidence in the record showing his condition could potentially equal the Listings at issue. *See Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) ("If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing.") (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). The ALJ failed to consider Plaintiff's severe impairments or make specific findings in the context of the Listing requirements. *See, e.g.*, *Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017) ("The district court should not have speculated what the ALJ may have concluded had he considered the medical evidence under the criteria in Listing 1.02."); *Miaun v. Colvin*, No. 3:14-CV-222-TAV-HBG, 2015 WL 2248750, at *10 (E.D. Tenn. May 12, 2015) ("The ALJ did not specify what Listings she considered regarding Plaintiff's physical impairments and did not apply any of the 11.02 criteria to his seizure disorder."); *Weisgarber v. Colvin*, No. 3:13–CV–426–TAV–CCS, 2014 WL 3052488, at *5 (E.D. Tenn. July 3, 2014) ("Due to the lack of comparison between a specific listing, particularly Listing 112.03, and any corresponding evidence, the Court is unable to conclude that the ALJ's step three finding is supported by substantial evidence.").

Although the Commissioner claims that evidence in the medical record supports a finding that Plaintiff can ambulate effectively, the Court finds that Plaintiff has set forth evidence alleging

that he could potentially meet the requirements of the Listing, and thus, the Court cannot engage in a *de novo* review. *See Miaun*, 2015 WL 2248750, at *12 ("Without identifying the listed impairments the ALJ considered and providing a sufficient analysis as to why Plaintiff's [severe impairments] does or does not satisfy [the Listing], the Court's hands are tied and consideration can go no further."); *Fury v. Comm'r of Soc. Sec.*, No. 5:11-CV-1660, 2012 WL 4475661, at *3 (N.D. Ohio Sept. 26, 2012) (finding that "to apply the facts of this case to [the Listings] for the *first time* and conclude that it does not apply [ ] would be a de novo review. As such, this Court is constrained from considering the argument").

The Court notes that Plaintiff's brief does not go into great detail about the exact requirements of each Listing, potentially in conflict with Plaintiff's responsibility to establish that they meet all of the requirements of the Listing at issue. *See, e.g., Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.").

However, with respect to the challenged Listings, the Commissioner seeks for the Court to review the pertinent medical evidence to find that Plaintiff has failed to establish that he meets every requirement of the Listing. Ultimately, the Court finds that "[t]his is not a case where the record is devoid of any evidence which could support a finding" that Plaintiff equals Listings 1.02, 1.03, as well as Listing 1.04, and the record "raises 'a substantial question' as to whether" Plaintiff equals these Listings. *Scott v. Comm'r of Soc. Sec.*, No. 16-11922, 2017 WL 2837150, at *10 (E.D. Mich. May 23, 2017) (citing *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)), *report and recommendation adopted by*, 2017 WL 2857494 (E.D. Mich. June 29, 2017).

Plaintiff "attempts to place the Court in the role of the physician," but the Court finds that "[t]he ALJ's failure to mention any listing, much less discuss why [Plaintiff] did not meet any listings, precludes meaningful review." *Id.* at *10, 14; *see also M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858 (E.D. Mich. 2012) ("As is plain from the quoted passage, the ALJ did not cite, discuss, or resolve any conflicts in the evidence in concluding that Plaintiff's mental impairment did not meet or medically equal a Listing. Nor did the ALJ even identify which Listing(s) Plaintiff's impairments were compared with.").

Here, the Court finds that the record in the present case "raises a 'substantial question'" as to whether Plaintiff could qualify as disabled under Listing 1.02 or Listing 1.03. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see, e.g.*, *Combs v. Colvin*, No. CV 15-104-DLB, 2016 WL 1301123 at *4 (E.D. Ky. Apr. 1, 2016).

Next, the ALJ's failure to analyze whether Plaintiff met or medically equaled Listing 1.02 or Listing 1.03 was not harmless, as "the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)(iii)). Only where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had a made the required findings, the ALJ would have found the claimant not disabled" will the failure of the ALJ to consider a particular Listing and its criteria at Step 3 be held harmless. *See Jaeger v. Comm'r of Soc. Sec.*, No. CV 16-14447, 2017 WL 4936023 at *4 (E.D. Mich. Oct. 5, 2017) (quoting *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858–59 (E.D. Mich. 2012)), *report and recommendation adopted by*, 2017 WL 4918575 (E.D. Mich. Oct. 31, 2017).

Therefore, as the ALJ has committed an error of law by failing to analyze Plaintiff's severe impairments under the applicable Listings, "the [C]ourt must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds*, 424 F. App'x at 414 (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011)).

Accordingly, the Court finds that Plaintiff's case should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to re-evaluate whether Plaintiff meets the requirements of Listing 1.02 or Listing 1.03. Overall, in order to facilitate meaningful review, the ALJ should identify the applicable listed impairments and consider the record as a whole in determining whether Plaintiff satisfied the requisite listing criteria

### 2. Listing 1.04

Plaintiff also alleges that the medical record establishes that he "suffers from multiple herniated nucleus pulposus, several areas of spinal stenosis, arthritis, and degenerative disc disease," and thus he meets the requirements of Listing 1.04. [Doc. 33-1 at 13]. Similar to Listing 1.02, Plaintiff claims that the records of Dr. McCroskey support a finding that he meets Listing 1.04. [*Id.* at 14]. However, the Commissioner asserts that "[a]gain, Plaintiff's FCE showed that he did not have the type of spinal irregularities from the listing, and he does not have an extreme limitation in his ability to ambulate effectively." [Doc. 35 at 11].

Listing 1.04 covers disorders of the spine, including degenerative disc disease, and requires that the disorder result in "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04(A) further requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle

> weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.* Accordingly, in addition to demonstrating a spinal disorder that results in the "compromise of a nerve root," Plaintiff must show (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight-leg test results, in order to meet the requirements of Listing 1.04(A). *Id.*

Although the Court has already found that Plaintiff's case should be remanded for a further consideration of whether Plaintiff meets the requirements of Listings 1.02 or 1.03, the Court also finds that Plaintiff has alleged sufficient evidence in the record that he could "plausibly satisfy" the requirement of Listing 1.04A. *See Weisgarber v. Colvin*, No. 3:13–CV–426–TAV–CCS, 2014 WL 3052488, at *6 (E.D. Tenn. July 3, 2014).

While the Commissioner claims that the results of the FCE performed by Mr. Marasigan establish that Plaintiff did not meet the requirements of Listing 1.04, the ALJ's conclusory analysis prevents the Court from being able to determine whether the ALJ's decision is supported by substantial evidence. *See Russell v. Comm'r of Soc. Sec.*, No. 2:15-cv-407, 2016 WL 1103897, at *6 (S.D. Ohio Mar. 22, 2016) ("Although the Commissioner argues that the ALJ's determination should be upheld because the record evidence elsewhere does not establish that Russell's impairment[s] satisfied the criteria for Listing 12.05C, 'the ALJ included no such analysis in the decision,' and this Court "cannot engage in post hoc rationalizations.'") (internal citations omitted). Accordingly, the Court will not find that Plaintiff failed to show that his impairments met or medically equaled in severity the requirements of Listing 1.04. *Jaeger v. Comm'r of Soc. Sec.*, No. CV 16-14447, 2017 WL 4936023 at *7 (E.D. Mich. Oct. 5, 2017) ("While the Court acknowledges this evidence and notes that, in some respects, the medical evidence is somewhat

equivocal with respect to certain criteria of Listing 1.04(A), the problem is that the ALJ's entire

Step Three analysis consists of a single sentence."), *report and recommendation adopted by*, 2017

WL 4918575 (E.D. Mich. Oct. 31, 2017).

Here, the Commissioner's position would require the Court to conduct a *de novo* review of

the medical record to determine whether Plaintiff satisfied the requisite elements of Listing 1.04.

*See Oldenkamp v. Comm'r of Soc. Sec.*, No. 1:13–CV–1303, 2015 WL 505805, at *5 (W.D. Mich.

Feb. 6, 2015) (differentiating from *Bukowski v. Commissioner,* No. 13–cv–12040, 2014 WL

4823861 (E.D. Mich. Sept. 26, 2014), as "[i]n sum, the ALJ's decision in *Bukowski* was affirmed

because the court found sufficient Step Three analysis elsewhere in the ALJ's opinion which

permitted meaningful judicial review. In the instant case, however, I find no analysis of Listings

1.04 or 11.03 anywhere in the ALJ's opinion, requiring instead, a *de novo* analysis of the record

evidence").  The ALJ did not make sufficient factual findings elsewhere in the disability decision

for the Court to now hold that the ALJ's conclusory finding that Plaintiff did not meet the Listing

is supported by substantial evidence.  *See Jaeger*, 2017 WL 4936023 at *7 (E.D. Mich. Oct. 5,

2017) (addressing Listing 1.04(A) and finding that "[r]egardless of how the ALJ might ultimately

decide Jaeger's claim, at this juncture, the Court cannot say that, if the ALJ had made the required

findings at Step Three, he necessarily *would have* found that Jaeger does not meet or medically

equal the relevant Listing").

Therefore, the Court is unable to "meaningful[ly] review" the ALJ's decision.  *Huckfeldt*

*v. Comm'r of Soc. Sec.*, No. 1:16-cv-1227, 2018 WL 1371424, at *3 (W.D. Mich. Feb. 27, 2018)

("The ALJ needed to actually evaluate the evidence, compare it to Listing 11.03 and give an

explained conclusion, in order to facilitate meaningful review. Without it, it is impossible to say

that the ALJ's decision at step three was supported by substantial evidence."), *report and*

*recommendation adopted by*, 2018 WL 1384479 (W.D. Mich. Mar. 16, 2018).  Ultimately, "[t]his is not an instance where the ALJ 'made sufficient factual findings elsewhere in his decision to support the conclusion at step three.'"  *Id.* (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)).

### B.    Medical Opinions

Plaintiff briefly challenges the ALJ's treatment of the medical opinions in the disability decision, claiming that the ALJ failed to give sufficient weight to his treating source's opinions. [Doc. 33-1 at 1, 10].  The Commissioner maintains that the ALJ properly considered the total opinion evidence in the record.  [Doc. 35 at 4].  First, the Commissioner asserts that the ALJ properly explained why he determined a less restrictive RFC than the work release of Plaintiff's treating surgeon, Steven Sanders, M.D.  [*Id.* at 5]; *see* [Tr. 21].  Next, the Commissioner claims that the ALJ detailed why he did not adopt the results of the FCE conducted by Mr. Marasigan, and that the ALJ did accommodate some of the restrictions in the FCE.  [Doc. 35 at 6]; *see* [Tr. 21].  Lastly, the Commissioner alleges that the ALJ properly noted Dr. McCroskey's treatment notes, and explained how Plaintiff's RFC was limited to incorporate Dr. McCroskey's opinion. [Doc. 35 at 7]; *see* [Tr. 21].

Ultimately, the Commissioner correctly states that Plaintiff does not name the treating physician's opinions which were allegedly incorrectly weighed, or assert how the ALJ failed to accommodate the opinions into the RFC determination.  Plaintiff solely alleges that the ALJ "erred in failing to give sufficient weight to the treating sources opinions."  [Doc. 33-1 at 1, 10].  "Case law supports finding waiver where the claimant does not identify a treating source or treating opinion the ALJ improperly evaluated."  *Doyle v. Comm'r of Soc. Sec.*, No. 13–12916, 2014 WL 4064251, at *18 (E.D. Mich. Aug. 18, 2014) (collecting cases).  Therefore, the Court finds that

Plaintiff has waived any argument that the ALJ improperly considered the opinions of Dr. Sanders, Dr. McCroskey, or Mr. Marasigan. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)).

However, the Court notes that Plaintiff developed an argument that the ALJ failed to properly weigh the opinion of Carolyn Parrish, M.D. Plaintiff alleges that "the findings of the DDS medical expert Dr. Carolyn Par[r]ish are questionable since they were perform[ed] be[for]e his MRIs in July 2014 and she did not have the benefit of those records in reaching her conclusion." [Doc. 33-1 at 10].

Dr. Parrish reviewed the medical evidence of record at the reconsideration level of the agency's review on February 4, 2014. [Tr. 70–81]. Dr. Parrish opined that Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, and that Plaintiff could stand and walk for about six hours in an eight-hour work day. [Tr. 77]. Further, Dr. Parrish opined that Plaintiff was unlimited in his ability to climb ramps and stairs, balance, stoop, kneel, or crouch, but that he was limited to the occasional climbing of ladders, ropes, and scaffolds and crawling. [*Id.*]. Additionally, Dr. Parrish opined that Plaintiff was limited in his ability to reach overhead with the bilateral upper extremities, and was limited to occasional overhead reaching with the right upper extremity, and to frequent overhead reaching with the left upper extremity. [Tr. 78].

In reviewing the opinion, the ALJ found Dr. Parrish's opinion to be a "reasonable estimation" of Plaintiff's ability to perform work-related activities, but "in an abundance of caution

and in anticipation of any pain, weakness, and fatigue" after a forty-hour workweek, the ALJ limited Plaintiff to "no frequent pushing and pulling movements with arm or leg controls," and found that Plaintiff is unable to climb and crawl with limited occasional overhead reaching. [Tr. 20–21].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3). However, when the non-examining source's opinion is based on review of an incomplete record, there must be an indication that the ALJ considered that fact before giving greater weight to the non-examining source's opinion. *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)).

On July 23, 2014, Dr. McCroskey detailed the results of MRI's of Plaintiff's cervical and lumbar spine. [Tr. 384]. The ALJ reviewed these MRI findings in great length, as the Court previously discussed when reviewing Listing 1.02. *See* [Tr. 18].[1] "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-

---

[1] *See infra* Section V(A)(1), reviewing Dr. McCroskey's medical records in the context of Listings 1.02 and 1.03.

submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (citing *Blakley*, 581 F.3d at 409). Here, while Dr. Parrish did not review the MRI's ordered by Dr. McCroskey, the ALJ subsequently discussed the results of the MRI and Plaintiff's functional limitations.

Similarly, in order for an ALJ to provide "'some indication' that he 'at least considered' that the source did not review the entire record . . . the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409). The ALJ did not adopt Dr. Parrish's opinion wholesale, but rather adopted a more restrictive RFC than opined by Dr. Parrish. The ALJ assessed an additional limitation prohibiting frequent pushing and pulling movements with arm and leg controls, as well as limitations on Plaintiff's ability to climb and crawl.

Accordingly, although Dr. Parrish did not review the MRI's ordered by Dr. McCroskey, the record reflects that the ALJ made an independent determination based on all the medical evidence and that the ALJ's analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the nonexamining state agency consultant's opinion which did not review the entire record as "the ALJ's own analysis clearly spanned the entire record"). Further, the ALJ subjected Dr. Parrish's opinion to "scrutiny" sufficient to find that he considered that Dr. Parrish did not review the entire record, as the ALJ adopted a more restrictive RFC. *See Kepke*, 636 F. App'x at 632.

Therefore, Plaintiff's allegation that the ALJ failed to provide sufficient weight to the opinions of his treating physicians, and Plaintiff's challenge to the findings of Dr. Parrish, do not constitute a basis for remand.

## C.     Severe Impairments

Plaintiff briefly alleges that the ALJ erred by failing to find to find his "syrinx, cervical and spinal stenosis, chronic severe pain, [and] his impaired knees condition" as severe impairments, and thus the ALJ failed to account for the limiting effects caused by these alleged severe impairments in the RFC determination.  [Doc. 33-1 at 10].

It is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations.  *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").

In the present case, the ALJ determined at Step Two that Plaintiff's severe impairments included degenerative disc disease of the lumbar spine, neck disorder status post injury and fusion with associated upper extremity limitations, and diabetes mellitus.  [Tr. 16].  The Commissioner alleges that the ALJ's severe impairment finding "included spinal disorders and complaints of pain; essentially the same problems Plaintiff cites, but under different names."  [Doc. 35 at 8].

As an initial matter, Plaintiff has failed to demonstrate that the ALJ's finding of "degenerative disc disease of the lumbar spine" and "neck disorder" as severe impairments does not encompass specific symptoms and diagnoses, such as a syrinx or cervical and spinal stenosis.

*See, e.g.*, *Salmen v. Berryhill*, No. 3:16-CV-218-CCS, 2017 WL 4293150, at *4 (E.D. Tenn. Sept. 27, 2017) ("As an initial matter, the Court is not convinced that the Plaintiff's severe impairment of 'neck disorder' does not encompass the more specific diagnosis of cervical spondylosis, cervical degenerative disc diseases, cervical stenosis, or cervical radiculitis."). Courts in this district have recognized generic or broad terminology to encompass more specific diagnoses. *See e.g., Waters v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14927, 2012 WL 511998, at *6 (E.D. Mich. Jan. 5, 2012) ("[W]hile the ALJ did not include the term 'lumbar back condition' in her Step Two findings, she found the 'history of gunshot wound,' thereby acknowledging Plaintiff's claim that alleged bullet fragments (allegedly causing back pain) created a work-related limitation."), *report and recommendation adopted by*, 2012 WL 512021, at *1 (E.D. Mich. Feb. 16, 2012); *Williams v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14149, 2011 WL 6217418, at *7 (E.D. Mich. Nov. 4, 2011) ("Finally, the ALJ's recognition of a 'discogenic degenerative disorder of the back' as a severe impairment at step two seems to encompass Plaintiff's cervical facet syndrome."), *report and recommendation adopted by*, 2011 WL 6217074 (E.D. Mich. Dec. 14, 2011). Moreover, Plaintiff has failed to demonstrate that the additional impairments alleged to be severe significantly limited his ability to perform work-related activities.

Lastly, any error by the ALJ to find these impairments as severe would be harmless because the ALJ considered all of Plaintiff's impairments in the disability decision. *See Fisk*, 253 F. App'x at 583. The ALJ cited to the July 23, 2012 treatment notes of Dr. McCroskey and discussed the report that Plaintiff's MRI showed a small syrinx in the lower cervical cord. [Tr. 17]. The ALJ also discussed the treatment notes of Dr. Darel Butler from April 25, 2013, and specifically noted Dr. Butler's finding that Plaintiff was found to have a syrinx and was referred for surgery along with damage to his cervical C4 and C6 discs. [Tr. 19]. Additionally, the ALJ discussed Plaintiff's

allegations of a "level ten pain daily" [Tr. 17], and Dr. McCroskey's note that Plaintiff reported of "severe pain in his lower back in the left lumbosacral region" [Tr. 18]. Lastly, the ALJ extensively reviewed imaging of Plaintiff's lumbar and cervical spine, including Dr. McCroskey's notation of "moderate bilateral foraminal stenosis at L3-4, L5-S1 due to degenerative changes, and moderate to severe bilateral L4-5 foraminal stenosis." [*Id.*].

Accordingly, the Court finds that the ALJ did not commit reversible error at step two and properly considered all of the Plaintiff's impairments, both severe and non-severe, at subsequent steps of the disability determination.

### D.     Subjective Allegations of Pain

Plaintiff contends that the improperly found that his complaints of pain were not fully credible, as the ALJ mischaracterized Dr. McCroskey's treatment note that Plaintiff was trying to wean himself off of his diabetes medication, rather than his pain medication. [Doc. 33-1 at 16–18]. Plaintiff also asserts that the ALJ failed to "take into account injuries diagnosed and illustrated by [Plaintiff's] MRI in July 2014." [Doc. 33-1 at 15–16].

In the disability decision, the ALJ noted that on March 3, 2014, Dr. McCroskey reported that Plaintiff "was trying to wean himself [off] of his medication." [Tr. 18]. When reviewing Plaintiff's alleged neck and back disorders, the ALJ noted Dr. McCroskey's treatment note on March 3, 2014 that Plaintiff "was trying to wean himself off of pain medication." [Tr. 20]. Additionally, the ALJ stated that on July 11, 2014, Dr. McCroskey noted that Plaintiff's "pain could be fairly severe, but that [Plaintiff] did not want to take pain medications, and that he wanted to be able to think clearly particularly when it came to his coursework." [Tr. 18]. Further, after reviewing Plaintiff's testimony, as well as the additional medical opinions and objective medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably

be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [Tr. 20].

Social Security Ruling 96-7p articulates the standard for evaluating a claimant's subjective allegations, including those regarding pain, as follows:

> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

1996 WL 374186, at *2 (July 2, 1996).[2]  When objective medical evidence fails to substantiate a claimant's subjective allegations regarding the intensity, persistence, or functional effects of pain, the ALJ must make a credibility finding based on the entire case record.  *Id.*

Moreover, and in addition to considering objective medical evidence, the ALJ must consider the following factors in assessing a claimant's credibility: (1) daily activities; (2) the location, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, received or have received for relief of pain or other symptoms; (6) any measures that are used or were used to relieve pain or other symptoms; (7) other factors concerning functional limitations and restrictions

---

[2] At the time of the ALJ's decision, SSR 96-7p, 1996 WL 374186 (July 2, 1996), governed the ALJ's analysis of the credibility of Plaintiff's statements concerning her symptoms. That ruling was later superseded by SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), which eliminated the use of the term "credibility" in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1.  However, "[b]ecause the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively," the Court will rely upon SSR 96-7p.  *See Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

due to pain or other symptoms. *Id.* at *3 (citing 20 C.F.R. § 404.1529(c)).

The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, the ALJ's finding must be supported by substantial evidence. *Id.* Finally, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

Initially, the Court notes that while the ALJ is required to "consider" the seven factors under Social Security Ruling 96-7p, there is no requirement that the ALJ explicitly discuss each factor. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Ausbrooks v. Astrue,* No. 12–12144, 2013 WL 3367438, at *19 (E.D. Mich. July 5, 2013) ("An ALJ, however, is not required to explicitly discuss every § 404.1529(c)(3) factor in [the credibility] assessment."); *Coleman v. Astrue*, No. 2:09-cv-36, 2010 WL 4094299, at *15 (M.D. Tenn. Oct. 18, 2010) (finding that "[t]here is no requirement [ ] that the ALJ expressly discuss each listed factor").

Plaintiff correctly states, and the Commissioner concedes, that the ALJ mischaracterized Dr. McCroskey's treatment note on March 3, 2014. While the ALJ discussed an attempt by Plaintiff to wean himself off of pain medication, Dr. McCroskey's treatment note does not mention pain medication, but rather states that Plaintiff is "trying to wean himself off of" medication in the context of discussing his diabetes treatment. [Tr. 385]. The Court notes, however, that the ALJ properly referenced Dr. McCroskey's treatment note on July 11, 2014 that Plaintiff "does not want to take pain medications," as he "wants to be able to think clearly, particularly when it comes to his coursework." [Tr. 388]. "However, even eliminating this reason, the remainder of the reasons provided by the ALJ provide a sufficient basis for the ALJ's decision to discount Plaintiff's

credibility." *Garcia v. Comm'r of Soc. Sec.*, No. 1:16-CV-2682, 2018 WL 838371, at *14 (N.D. Ohio Feb. 12, 2018); *see, e.g. Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (holding "harmless error analysis applies to credibility determinations in the social security disability context").

In assessing Plaintiff's level of pain, the ALJ also noted that Plaintiff is currently pursuing an advanced divinity degree online, as well as that his exercise routine used to allow him to function on a day-to-day basis. [Tr. 18, 22]. Additionally, the ALJ discussed Plaintiff's driver's license and car, and his testimony that he was able to drive. [Tr. 22]. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (finding an ALJ may consider a plaintiff's daily activities in evaluating the credibility of allegations of disabling symptoms); *Wheeler v. Colvin*, No. 1:13-CV-1070, 2014 WL 4113139, at *16 (N.D. Ohio Aug. 20, 2014) (finding substantial evidence supported the ALJ's decision to partially discount the Plaintiff's credibility in part because of Plaintiff's daily activities, including driving and attending online college classes).

Moreover, the ALJ did not rely solely on Plaintiff's daily activities when assessing her credibility. The ALJ also considered the extent to which Plaintiff's allegations of disabling pain were inconsistent with the objective medical evidence. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2003) ("[T]he ALJ did not give undue consideration to Temples' ability to performing day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). With respect to the July 23, 2014, as the Court has previously discussed, the ALJ reviewed the MRI findings at great length. [Tr. 18]. The ALJ also reviewed all applicable medical opinions, and specifically noted that Plaintiff's treating surgeon, Dr. Sanders, found that Plaintiff was able to return to work on April 19, 2013. [Tr. 20].

The Sixth Circuit has held that the Court must accord great deference to an ALJ's credibility assessment, particularly "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). In the present case, the ALJ properly evaluated Plaintiff's credibility pursuant to the applicable regulations and policies. *See* 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186 (July 2, 1996). Accordingly, the Court finds that the ALJ's credibility finding is supported by substantial evidence. However, on remand, the ALJ should clearly review all applicable factors under 20 C.F.R. § 404.1529(c) in weighing Plaintiff's credibility, and explain the credibility determination with respect to Plaintiff's allegations.

## VI.  CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 33**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 34**] will be **DENIED**. This case will be **REMANDED** to the Social Security Administration with instructions that the ALJ re-evaluate whether Plaintiff meets the requirements of Listing 1.02, Listing 1.03, and Listing 1.04. Overall, in order to facilitate meaningful review, the ALJ should identify the applicable listed impairments and consider the record as a whole in determining whether Plaintiff satisfied the requisite Listing criteria

ORDER ACCORDINGLY.

_____
United States Magistrate Judge